UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAVAL ANTHONY GREEN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12052** |
| **DEPUTY SHERIFF GUIDRY, ET AL.** | **SECTION: "I"(1)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Javal Anthony Green, a Louisiana state prisoner, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983. He sued Deputy Sheriff Guidry, Deputy Sheriff Edward Lawson, and Officer John Verret,[1] alleging that the defendants violated his rights in numerous respects.

To clarify plaintiff's claims, the Court held a Spears hearing on September 27, 2019. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

**I.  Screening Standards**

Plaintiff filed this federal civil action *in forma pauperis*.[2] Concerning such actions, federal law provides:

---

[1] In the original complaint, plaintiff listed "John Verdin" as a defendant; however, in his corrected complaint and at the Spears hearing, plaintiff indicated that the defendant's correct name is "John Verret."
[2] Rec. Docs. 5 and 10.

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> > (i)       is frivolous or malicious;
> > (ii)      fails to state a claim on which relief may be granted; or
> > (iii)     seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[3] Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims

---

[3] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II.  Plaintiff's Claims

In his complaint, plaintiff asserts a variety of claims and seeks relief pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

For the following reasons, it is recommended that all of plaintiff's claims be dismissed pursuant to the Court's screening authority.

### A. Murder Threat

Plaintiff claims that, during his arrest, Officer John Verret and another unidentified officer threatened to murder him, make it look like an overdose, and dump his body in Dulac, Louisiana. However, that allegation, even if true, is not actionable under § 1983, because "[v]erbal threats do not rise to the level of a constitutional violation." Westbrook v. Treon, 78 F. App'x 970, 972 (5th Cir. 2003); accord Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]laims of verbal abuse are not actionable under § 1983 ...."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

### B. Excessive Force

Plaintiff next claims that, after a prior arrest, he was placed in a restraint chair and choked by Deputy Sheriff Guidry, Deputy Sheriff Lawson, and other officers. At the Spears hearing, plaintiff testified that this incident occurred on August 29, 2017. This claim must therefore be dismissed because it was not filed within the applicable statute of limitations.

"Where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed as frivolous. Courts may raise the defense of limitations sua sponte in a § 1915 action." Abston v. Federal Bureau of Prisons, 689 F. App'x 304, 304 (5th Cir. 2017) (citation, quotation marks, and brackets omitted).[4]

---

[4] That said, "[b]efore entering a sua sponte dismissal on limitations grounds, a court must accord the parties fair notice and an opportunity to present their positions." Juarez v. Anderson, 598 F. App'x 297, 297 (5th Cir. 2015) (quotation marks omitted). By virtue of this Report and Recommendation, plaintiff is hereby placed on notice that the issue of prescription is being raised with respect to this excessive force claim for the following reasons and that he has the opportunity to respond in an objection to the United States District Judge. See Alexander v. Trump, 753 F. App'x 201, 208 (5th Cir. 2018) (noting that issuance of a Report and Recommendation adequately provides a plaintiff with notice of a Court's sua sponte invocation of a defense and an opportunity to respond), cert. denied, 139 S. Ct. 1200 (2019); Webster v. United States, Civ. Action No. 6:19-CV-00196, 2019 WL 2511167, at *1 (E.D. Tex. June 17, 2019).

Regarding the statute of limitations, the United States Fifth Circuit Court of Appeals has held:

> The statute of limitations for Section 1983 claims is "the forum state's personal-injury limitations period," which in Louisiana is one year. Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998). "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions." Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993). However, federal law governs when a Section 1983 claim accrues. Jacobsen, 133 F.3d at 319. This court has stated that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Gartrell, 981 F.2d at 257. As a result, the limitations period begins "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'" Id. (quoting Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir. 1980)).

Smith v. Regional Transit Authority, 827 F.3d 412, 421 (5th Cir. 2016). Therefore, "[a]n excessive force claim generally accrues on the date when the force is inflicted." Morrill v. City of Denton, 693 F. App'x 304, 306 (5th Cir. 2017); accord Armstrong v. Serpas, 670 F. App'x 851, 852 (5th Cir. 2016). Accordingly, plaintiff's claim accrued on the date the excessive force was used against him, i.e. **August 29, 2017**, and the statute of limitations then required that he file suit with respect to that claim within one year of that date. However, plaintiff did not file this federal complaint until **August 1, 2019**.[5]

Because plaintiff's excessive force claim accrued in **2017** but he did not file his complaint until **2019**, the claim was clearly prescribed *unless* the one-year statute of limitations was tolled. As previously noted, the Court looks to the forum state's law to determine whether the limitations

---

[5] Because plaintiff is a *pro se* prisoner, his complaint is "deemed filed as of the date that he duly submitted it to prison authorities for forwarding to the clerk of court." Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Here, that date is not apparent from the record; however, it obviously was no earlier than the date on which he signed the complaint. See, e.g., Smith v. Tanner, Civ. Action No. 18-3719, 2018 WL 6204617, at *6 (E.D. La. Nov. 11, 2018), adopted, 2018 WL 6199974 (E.D. La. Nov. 27, 2018). Plaintiff signed his complaint on August 1, 2019. Rec. Doc. 4-1, p. 6.

5

period was tolled.  Smith, 827 F.3d at 421.  Regarding Louisiana's laws on tolling, the United States Fifth Circuit Court of Appeals has explained:

> Under Louisiana law, the doctrine *of contra non valentem* suspends the running of prescription in "exceptional circumstances." Lapuyade v. Rawbar, Inc., 190 So. 3d 1214, 1220 (La. Ct. App. 2016).  Louisiana courts apply the doctrine of *contra non valentem* in four situations:
>
>> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>> (4) where the cause of action is neither known nor reasonably known by the plaintiff even though plaintiff's ignorance is not induced by the defendant.
>
> Marin v. Exxon Mobil Corp., 48 So.3d 234, 245 (La. 2010).

LaShip, L.L.C. v. Hayward Baker, Inc., 680 F. App'x 317, 323 (5th Cir. 2017).

Plaintiff has identified no reason that the doctrine of *contra non valentem* would apply in this case.  Therefore, the undersigned recommends that the excessive force claim be dismissed as frivolous because it was prescribed at the time the complaint was filed.

## C.  Strip Searches

Plaintiff also complains that he was strip searched on two occasions by a homosexual male guard.  When he filed a grievance concerning the incidents, a jail officer responded that jail policy provides that inmates are searched by an officer of the same gender – regardless of sexual orientation – at booking and at the time the inmates are placed into the prison population.[6]  At the Spears hearing, plaintiff acknowledged that the other inmates who were booked with him were in fact similarly strip searched.

---

[6] See Rec. Doc. 4-3, p. 1.

6

The United States Fifth Circuit Court of Appeals has explained:

> Prison practices that impinge on prisoners' constitutional rights are valid as long as they are reasonably related to legitimate penological interests. The evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. Strip searches have been repeatedly recognized as an important tool of prison security, and are not *per se* unconstitutional. A prisoner retains, at best, a very minimal Fourth Amendment interest in privacy after incarceration. When reviewing the reasonableness of searches, this court strikes a balance in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner. We defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security. Finally, for the purposes of Fourth Amendment analysis, we review the objective reasonableness of conducting a search, and not the officer's subjective intent.

McCreary v. Richardson, 738 F.3d 651, 656-57 (5th Cir. 2013) (citations and quotation marks omitted).

The jail policy at issue here, which requires strip searches at booking and when inmates are moved into the jail population, are obviously aimed at ensuring institutional security and preventing the introduction of contraband into the facility. Those are clearly legitimate penological objectives. See Florence v. Board of Chosen Freeholders of County of Burlington, 566 U.S. 318, 322 (2012) ("Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies. Facility personnel, other inmates, and the new detainee himself or herself may be in danger if these threats are introduced into the jail population."); Bell v. Wolfish, 441 U.S. 520, 559 (1979) ("A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."); Lewis v. Secretary of Public Safety and Corrections, 870 F.3d 365, 368 (5th Cir. 2017)

("Controlling the flow of contraband and ensuring institutional security are legitimate penological objectives.").

Further, the fact that a guard who performs a strip search may be a homosexual is not in and of itself actionable. See Covarrubias v. Foxworth, Civ. Action No. 6:13cv812, 2016 WL 4836864, at *10 (E.D. Tex. Sept. 14, 2016) ("No case has held that the possible presence of homosexuals, whether inmates or staff, gives rise to heightened privacy rights on behalf of other prisoners being strip searched."). Moreover, the Court notes that plaintiff does not allege he was physically assaulted by the guard who conducted the searches or touched in an inappropriate way.

For these reasons, plaintiff has failed to state a facially plausible claim concerning the strip searches.

### D. Recreation

Plaintiff next complains that he has been allowed outside recreation on only four occasions during his four-month incarceration. At the Spears hearing, he testified that he is confined in an open dorm. He acknowledged that some inmates exercise inside the dorm, although he personally feels that the dorm is too crowded for such activity.

The jurisprudence reflects that even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. See, e.g., Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010) ("[A]n inmate has no constitutional right to out-of-cell exercise if he has enough room to exercise in his cell and suffers no ill effects from the restrictions."); Broussard v. Phelps,

Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (finding that no constitutional deprivation was shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise). Simply put:

> [I]t is clear that inmates have no protected liberty interest in specific or any particular amount of outdoor recreational opportunities, and the deprivation of exercise is not a *per se* constitutional violation. To succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish the existence of any health hazard under the specific circumstances involved.

Tucker v. Gusman, Civ. Action No. 15-1811, 2015 WL 6869564, at *12 (E.D. La. Nov. 9, 2015) (citations, quotation marks, and brackets omitted). Because plaintiff concedes that inmates are able to exercise inside the dorm despite the crowded conditions, and because he has identified no physical harm that he has suffered from the limited opportunity for outside recreation, his claim fails.

### E. Toothpaste/Koran/Bible

Plaintiff also claims that he was not provided with free toothpaste, a free Koran, and a free Bible. When he filed an administrative grievance complaining that he should be given free toothpaste and a free copy of the Koran, a jail official responded that those items were available for purchase from the jail commissary. Noting that plaintiff had recently placed a $35.00 commissary order for other items such as snacks, the official advised him he should instead use his funds to buy toothpaste and religious materials if that is what he wants.[7] Therefore, it is clear that plaintiff is not forbidden from possessing and using any of these items; they simply will not be provided to him for free. That is not unconstitutional.

---

[7] See Rec. Doc. 4-3, p. 2.

As to the denial of free toothpaste, it is clear that the federal constitution does not require that free hygiene supplies be provided to non-indigent inmates.  See Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *10 (E.D. La. May 11, 2010); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003); Roach v. Klingman, 412 F. Supp. 521, 526-27 (E.D. Pa. 1976).

As to the denial of free copies of the Bible and the Koran, "[t]he refusal to provide the demanded religious articles is well within the latitude in the administration of prison affairs which prison officials must be accorded."  Frank v. Terrell, 858 F.2d 1090, 1091 (5th Cir. 1988) (quotation marks omitted); accord Mack v. Reynolds, No. 797CV170R, 2000 WL 1808277, at *3 (N.D. Tex. Dec. 11, 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense.").

Accordingly, these claims are frivolous and should be dismissed on that basis.

### F.  Blanket/Jumper

Plaintiff also complains that he wanted a replacement blanket and jumper after his was stolen.  When he filed an administrative grievance about the matter, he was instructed that he simply needed to submit a request to the jail's property officer for replacements.[8]  At the Spears hearing, plaintiff acknowledged that he had not made such a request.  Therefore, plaintiff was not denied a replacement blanket and jumper; rather, he was only required to request them in accordance with the jail's policies and procedures.  A requirement that inmates follow such policies and procedures is not unreasonable, much less unconstitutional.  Therefore, this claim is likewise frivolous.

---

[8] See Rec. Doc. 4-3, p. 3.

### G.  Pillows

Plaintiff next claims that he was not provided with a pillow.  When he filed an administrative grievance complaining about that fact, he was told that the facility does not issue pillows.[9]  This claim is frivolous because the denial of a pillow, without more, does not rise to the level of constitutional violation.  See, e.g., Johnakin v. NYC Dept. of Corrections, No. 11-CV-4807, 2013 WL 5519998, at *13 (E.D.N.Y. Sept. 30, 2013) ("[A]llegations that DOC failed to provide a pillow and mattress cover are insufficient to state a claim under the Eighth or Fourteenth Amendments."); see also Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988) ("[Plaintiff] complains of several other aspects of his confinement.  For example, he protests that he was denied use of a pillow ….  As the district court observed, the conditions at the Marshall County jail may be far from ideal.  But again, the Marshall County jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels.  In order to make out a claim under 42 U.S.C. § 1983, [plaintiff] must show that intentional actions of the defendants served to deprive him of a constitutional right.  He has not been constitutionally harmed here." (citation omitted)); Morrow v. County of Nassau, No. 15-CV-4793, 2015 WL 6691672, at *4 (E.D.N.Y. Nov. 3, 2015); McClure v. Thaler, Civ. Action No. 5:11cv180, 2012 WL 2885727, at *3 (E.D. Tex. July 13, 2012) ("[T]he weight of better authority holds that inmates have no constitutional right to a pillow."); Liles v. Camden County Department of Corrections, 225 F. Supp. 2d 450, 458-59 (D.N.J. 2002).

### H.  Housing

Plaintiff also claims that he was housed with convicted inmates from the Department of Corrections while he was a pretrial detainee.  At the Spears hearing, he acknowledged that he was not harmed as a result of the mixed housing.

---

[9] See Rec. Doc. 4-3, p. 5.

Although such a practice of housing convicted inmates and pretrial detainees together is not ideal, it is not *per se* unconstitutional. As United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
> > [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security,*' or physical facilities do not permit their separation. *Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted* .... Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.
>
> Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added). Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.
>
> Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).
>
> Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe [sic] to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach,

> No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).
>
>> The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted). See also Burciaga v. County of Lenawee, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000) ("[T]he overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates."); Chapman v. Guessford, 924 F. Supp. 30, 33 (D. Del. 1996) ("Pre-trial detainees who are lawfully held pending a trial have no liberty interest in being housed separately from sentenced inmates.").

In the instant case, plaintiff does not allege that the housing decisions within the jail were made indiscriminately without justification or that his housing assignment was made with an intent to punish him or with deliberate indifference to his safety. Therefore, his conclusory and unsupported claim should be dismissed.

### I. Medical Attention

Plaintiff next claims that he was denied medical attention. Asked about this claim at the Spears hearing, he stated that his spine hurt. He testified that when he asked for medical attention, he was told that he must "fill out a yellow slip." He acknowledged that he did not submit his first yellow slip until a day or two before the Spears hearing.

All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail, and that right is violated if the inmate's "serious medical needs" are

13

met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). In the instant case, even if the Court were to assume for the purposes of this decision that plaintiff's spinal problem constitutes a serious medical need,[10] his claim would nevertheless still fail because he cannot establish that the jail officials acted with deliberate indifference.

The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, jail officials did not ignore plaintiff's need for medical care; rather, they simply instructed him that he must submit a formal request for medical care in accordance with the jail's procedures. Requiring such a request does not violate an inmate's right to medical care. See, e.g., Kitchen v. Webre, Civ. Action No. 13-6705, 2014 WL 2566065, at *5 (E.D. La. May 14, 2014) ("It is not a constitutional violation for prison officials to require inmates to submit 'sick call' requests for non-emergency medical concerns."); see also Alexander v. Texas Department of

---

[10] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

14

Criminal Justice, Civ. Action No. H-16-3520, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("[Prisoner]'s allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference for purposes of stating a claim under the Eighth Amendment."); Curtis v. Gonzales, Civ. Action No. SA-09-CV-0911, 2010 WL 3928521, at *3 (W.D. Tex. Oct. 5, 2010) (Nowak, M.J.) ("Rather than ignore [the prisoner]'s complaints, [prison] employees instructed [the prisoner] to comply with prison procedures for seeking medical treatment. Such conduct does not evince a wanton disregard for a serious medical need.") (adopted by Garcia, J., on December 10, 2010); Maxwell v. Epps, No. 4:04CV168, 2007 WL 4287712, at *2 (N.D. Miss. Dec. 4, 2007).

## J.  Water

Lastly, plaintiff claims that there is something in the jail water that causes him to develop a rash when he showers. He opines that the jail water must be different from the other water in Houma, because he did not have this problem previously. However, such bare assertions and conclusory allegations neither suffice to state a claim that the Court can deem plausible nor raise a right to relief above the speculative level.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this __4th__ day of October, 2019.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.